MARY J. LOVELAND

*v.*

HENRIETTA H. LOVELAND.

*Filed at Ottawa January 22, 1891.*

1.   DELIVERY OF DEED—*whether established by the facts.*   A person purchased lots in his mother's name, but with his own money, she holding the title at his request.   The grantee in the deed, and her husband, at the son's request, made a deed to the latter, and on its acknowledgment turned it over to the notary, who, as soon as he had placed his seal upon it, delivered it to the son, and he, some time after, placed the same in his safety box in a bank, where it remained unrecorded up to his death and under his sole control.   That deed was executed before conveyance was made under the original purchase.   The son took possession of the lots, erected buildings thereon and rented them himself, and occupied one as his residence.   He executed leases of the other buildings, collected rents, and insured the same in his own name :   *Held,* that the facts showed a delivery of the mother's deed to him.

2.   In such case the fact that the deed to the son was found, after his death, in the safety vault, can not be regarded as evidence that the delivery to him was withdrawn, simply because he permitted his mother and other relations to keep their papers in the same box, when he alone kept the pass-word which was necessary to gain access to the box.

3.   The fact that the son, in borrowing money to improve the lots, had his mother, in whom the records showed title, to execute a mortgage to secure the loan, which he also guaranteed and paid, was no evidence of her intention to retain control over the deed to him.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. LORIN C. COLLINS, Judge, presiding.

Messrs. FREEMAN & WALKER, for the plaintiff in error :

Delivery is essential to render a deed operative.   *Byars v. Spencer,* 101 Ill. 430 ;   *Skinner v. Baker,* 79 id. 496 ;   *Blake v. Fash,* 44 id. 302 ;   *Bryan v. Wash,* 2 Gilm. 557.

A delivery may be by acts or words, or both, or by one without the other.   But what is said or done must clearly manifest the intention of the grantor and the grantee that the deed shall become at once operative to pass the title.   *Brown*

v. *Brown*, 66 Me. 316; *Byars* v. *Spencer*, 101 Ill. 433; *Kings-bury* v. *Burnside*, 58 id. 324.

To make a good delivery it was essential that the grantor should have lost all control over the deed. *Cook* v. *Brown*, 34 N. H. 475; *Brown* v. *Brown*, 66 Me. 316; *Byars* v. *Spencer*,. 101 Ill. 430; *Shurtleff* v. *Francis*, 118 Mass. 154.

The execution of the notes and trust deed secured upon the property was such a subsequent act of ownership by the .grantor as to withdraw the deed even from a conditional delivery. *Stinson* v. *Anderson*, 96 Ill. 376.

Where a grantor in a deed retains the right of control over it, it is not an *escrow*. *Campbell* v. *Thomas*, 42 Wis. 437; Bishop on Contracts, secs. 359-361.

Messrs. MANNING & CASTLE, for the defendant in error: .

On the question of delivery, see *Weber* v. *Christen*, 121 Ill. 97; *Gilbert* v. *Insurance Co.* 23 Wend. 35; *People* v. *Bostwick*, 32 N. Y. 447; *Reed* v. *Douthit*, 62 Ill. 348; *Tunison* v. *Chamblin*, 88 id. 378.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

On May 14, 1888, William R. Loveland died intestate in Chicago, leaving him surviving no children, but his widow named Henrietta H. Loveland, the defendant in error; his mother Mary J. Loveland, the plaintiff in error; his father D. H. Loveland, his two brothers, Edward J. and Frederick P. Loveland, and his sister, Mary H. Loveland. An original bill for a receiver was filed by plaintiff in error and the other heirs in the Circuit Court of Cook County on July 18, 1888, but there is no dispute as to the issues involved in it. After answering it, defendant in error filed a cross-bill against the other heirs, claiming to own one undivided one half part of her husband's estate, and dower in the other half, and praying for partition, widow's award, assignment of dower and homestead. Answer was filed to the cross-bill, admitting the allegations

thereof and the interests as therein stated, except as to the prop-
·erty on Prairie Avenue in Chicago as hereinafter mentioned.

William R. Loveland owned a considerable amount of real
estate in Chicago at the time of his death. Its value is esti-
mated to be about $100,000.00. Included in it were five lots
at the corner of Prairie Avenue and 37th street in Chicago,
upon which were nine dwelling houses subject to a mortgage
of $21,000.00. When William R. died, he and his wife oc-
·cupied the corner house as their home. The controversy in
the case is between the mother and the widow of the deceased
as to the ownership of this property.

Plaintiff in error claims that she owned the Prairie Avenue
property when her son died, and that the widow has no inter-
·est in it. Defendant in error claims that said property be-
longed to her husband at the time of his death, and passed
by inheritance to herself and the other heirs in the manner
fixed by the law in case of intestate estates. The Circuit Court
decided, that the houses and lots were the property of the in-
testate when he died. We think that this decision was correct.

The main question in the case is one of fact, and is whether
a deed of the property executed by plaintiff in error to the
deceased on August 25, 1885, was or was not delivered to the
latter in his lifetime. It would serve no useful purpose to enter
into an elaborate discussion of the testimony. We will only
state such facts as, in our opinion, are established by the evi-
dence, and which satisfy us that there was a delivery of the
deed.

On August 25, 1885, the deceased went in company with
Thomas H. Gault, his attorney, who was also a Notary Public,
to the house where his father and mother were living on Cal-
umet Avenue. There, at his request his mother and father
signed the deed in question conveying to him the five lots on
Prairie Avenue which were then vacant. They there acknowl-
edged the deed before Mr. Gault, who took it and put it in his
pocket. Gault, the deceased and plaintiff in error then left

the house, and the three went together to the office of an attorney named Galloway. Mr. Galloway was the agent of Charles W. Smith of Richmond, Virginia, who owned the five lots and had theretofore made sale of them to the deceased for $12,500.00. The deceased gave to Galloway his check for $5850.00, the amount of the cash payment on the purchase of the lots, and, at his request, his mother, the plaintiff in error, signed a mortgage to secure the remainder of the purchase money due to Smith. Thereupon Galloway delivered to the deceased a deed executed by Smith and wife, conveying the lots to the plaintiff in error, Mary J. Loveland. Plaintiff in error then took a street car and went back to her home. The deceased and Gault went over to the recorder's office, and the former filed for record the deed from Smith and wife to his mother. William R. Loveland and Gault then went to the latter's office, where Gault put his notarial seal upon the certificate of acknowledgment of the deed from plaintiff in error and her husband to William R. Loveland, and handed said deed to said William, who took it away with him. This deed was never recorded in the lifetime of William, but it was found after his death in his box in the vaults of the National Safety Deposit Company in the First National Bank Building in Chicago, and recorded by his widow and administratrix. The defendant in error went from Chicago to Vermont in May, 1885, on account of ill health, and was absent until some time in September, 1885.

The lots were purchased by William R. Loveland with his own money. No part of the consideration was paid by his mother. She merely held the title for him at his request. She and her husband were poor. She never retained the deed, made to her son, in her own possession after it was executed. She turned it over to the notary, who, as soon as he had placed his seal upon it, delivered it to William R. Loveland, the grantee named in it. When the latter placed it in the safety box, is not shown. He may have kept it elsewhere than in

said box during the greater portion of the time between its execution and his death. For nearly three years, from August, 1885, to May, 1888, it was in his possession, and not under the control of his mother. After she signed it, she never saw it until after her son's death. The proof shows an intention on her part to part with the possession and control of the deed. (*Byars* v. *Spencer,* 101 Ill. 429.) She was in no sense the owner of the property at any time. She signed the deed to her son before the deed from Smith to her was delivered. Her son built the houses upon the lots and rented them himself, and occupied one of them as his residence. He signed the leases to the tenants, and took out the insurance policies to the amount of $30,000.00 in his own name. It is clear to our minds that there was a delivery of the deed to the grantee named in it.

Two circumstances are relied upon to show that there was no delivery of the deed by the plaintiff in error. In the first place, it is said that the box in the safety vaults was a family box, but we do not think that the evidence sustains this claim. The father and brother of the deceased had been in business with him, but the former retired from the business in 1881 and the latter in 1883. If any members of the family had papers in the box at any time, it was by William's sufferance and permission, and not because of their right to its use. He rented the box in his own name and carried the key. He alone knew the pass-word, which it was necessary to know in order to gain access to the box. His brother rarely ever visited the box except in his company. His mother never visited it at all until after his death, and, although she was in possession of a key to it some time in the latter part of 1887, she was never entrusted with a knowledge of the pass-word. The fact, that the deed was found after his death in his box in the safety vaults, cannot be regarded as evidence that the delivery to him was withdrawn, simply because he permitted other members of his family to keep their papers in the box.

In the second place, the execution of a mortgage by plaintiff in error after the delivery by her of the deed to her son is urged as proof of her continued control over the property, and of her withdrawal of the delivery of the deed, if there had been a delivery. On June 18, 1886, plaintiff in error and her husband executed to P. E. Stanley a trust deed upon the lots to secure their own note for $21,000.00, payable in five years. In support of the position that this act was evidence of an intention to keep the deed to her son under her own control, the case of *Stinson et al.* v. *Anderson et al.* 96 Ill. 373, is referred to. In that case, however, there was no unconditional delivery of the deed by the grantor, but an express reservation of control over it; the custodian was to keep it for the grantor and surrender it if the grantor should call for it; it also there appeared that the grantor was the real owner of the property described in the deed.

Here, however, the grantor was a mere holder of the legal title for the grantee and had no interest in the property, nor was the delivery of the conveyance in any way conditional. Plaintiff in error had no will in the matter. She admits that she signed the papers because her son told her to do so. The sum of $21,000.00 secured by the trust deed was money borrowed by the deceased to build the houses upon the lots. Stanley paid the money to him and not to his mother. He guaranteed the payment of the notes. Stanley swears that he regarded William R. Loveland as the borrower, and knew nobody in the transaction as owner of the property except William R. Loveland. The mortgage, though nominally executed by the mother, was in fact made by the son through her as the ostensible holder of the title. Therefore, her execution of the mortgage was in no sense an evidence of her intention to retain a control over the deed. She was a passive instrument in her son's hands.

The decree of the Circuit Court is affirmed.

*Decree affirmed.*